IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CATHERINE C. CHANDLER, et al.,

        Plaintiffs,

v.                                    CIVIL ACTION NO.  2:10-cv-00839

JOURNEY EDUCATION MARKETING, INC.,  et al.,

        Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the court is a Motion to Dismiss, Transfer, or Stay [Docket 5], filed by the defendants, Journey Education, Inc. ("Journey") and Michael S. Fischler.  For the reasons provided below, the motion is **GRANTED IN PART** and this case is **STAYED** pending arbitration.

I.      **Background**

The plaintiffs are former shareholders of CCV Software, Inc. ("CCV"), a West Virginia corporation that had its principal place of business in Kanawha County, West Virginia.[1]  In February 2008, the plaintiffs entered into an agreement to sell CCV to defendant Journey.  Pursuant to the terms of a Merger Agreement and Plan of Reorganization (the "Merger Agreement"), Journey agreed to pay $2.25 million in exchange for all of CCV's outstanding stock.  At closing, Journey delivered half of that sum.  The other half ($1.125 million) was to be wired at closing to "an interest bearing escrow account," and then "released by the escrow agent one hundred eighty (180) days

---

[1] The plaintiffs are Catherine C. Chandler, Thomas C. Naerebout, Donna Hamra, and Cheryl K. Narum.

from the date of Closing subject to the satisfaction of the terms and conditions of Section 5.1.13 of the Merger Agreement." (Compl. [Docket 1-2] ¶ 17.)

Plaintiff Catherine C. Chandler, individually and in her role as a representative of CCV's shareholders, separately executed an agreement concerning the escrow account (the "Escrow Agreement"). The plaintiffs now claim that Journey never formally executed the Escrow Agreement and never established or funded the escrow account. Instead, on July 1, 2008, Journey sent the plaintiffs an e-mail advising them that a "new" escrow agent had been selected, necessitating the signing of a new escrow agreement. The plaintiffs claims that the defendants misrepresented the status of the escrow account, misleading the plaintiffs into believing that the "old" Escrow Agreement had been formally executed and that an escrow account had been funded.

Contemporaneously with the Merger Agreement and the Escrow Agreement, Journey entered into a "Business Services Agreement" with plaintiffs Chandler and Naerebout. The Business Services Agreement allowed Chandler and Naerebout to earn deferred compensation and bonuses based on the post-merger financial performance of the former CCV operations. According to the plaintiffs, Chandler and Naerebout were fraudulently induced by Journey, and by its president Michael S. Fischler, into entering into the Business Services Agreement.

After 180 days passed from the date of closing, Journey objected to the release of any escrowed funds to the plaintiffs. Specifically, Journey claimed that it was entitled to "offsets" against those funds. The plaintiffs, on the other hand, claim that Journey has wrongfully withheld the balance of the purchase price ($1.125 million) owed to them under the terms of the Merger Agreement and the Escrow Agreement. They also claim that the are owed the compensation due to Chandler and Naerebout pursuant to the Business Services Agreement.

On February 9, 2009, Chandler, in her role as the representative of CCV's former shareholders, filed a demand for arbitration with the American Arbitration Association (the "AAA") in Dallas, Texas.  In their written submission to the AAA, the shareholders explained:

> In addition to compensatory and punitive damages for fraud, lack of good faith and fair dealing by Journey, the Shareholders are entitled to the full payment of the balance of the purchase price for their stock in the amount of $1,125,000 plus interest from February 4, 2008 and attorneys' fees, costs of suit and the expenses of this arbitration.

> The Merger Agreement, Escrow Agreement, and Business Services Agreement contain mandatory arbitration clauses and mandate that arbitration of any disputes arising under the Agreement(s) be pursuant to the rules of the American Arbitration Association (AAA) in Dallas County, Texas.

(Pls.' Mem. Opp., Ex. 1 [Docket 9-1], at 6.)

Just under a year later, on January 29, 2010, the plaintiffs filed the instant lawsuit in the Circuit Court of Kanawha County, West Virginia, naming Journey and Fischler as defendants.  The Complaint asserts a claim for declaratory relief, fraud, breach of contract, breach of fiduciary duties, and conversion.  Thereafter, the defendants timely removed the action to this court on the basis of diversity jurisdiction and then filed their Motion to Dismiss, Transfer, or Stay [Docket 5].  The motion has been fully briefed and is now ripe for review.

## II.     Discussion

The defendants maintain that all of the plaintiffs' claims fall within the scope of the arbitration clauses found in the Merger Agreement, the Escrow Agreement, and the Business Services Agreement.  Thus, under the Federal Arbitration Act (the "FAA"), they maintain that this case must be dismissed or stayed while the dispute is arbitrated.  The plaintiffs dispute that the entirety of their claims are subject to arbitration.  They further contend that the agreements are each

voidable due to the fact the defendants fraudulently induced the plaintiffs into agreeing to their terms.

The FAA provides in pertinent part that written agreements to arbitrate in contracts relating to commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "The FAA requires a court to stay 'any suit or proceeding' pending arbitration of 'any issue referable to arbitration under an agreement in writing for such arbitration.'" *Adkins v. Labor Ready*, 303 F.3d 496, 500 (4th Cir. 2002) (quoting 9 U.S.C. § 3).  Furthermore, "any doubts concerning the scope of arbitrable issues shall be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  Accordingly, "the heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration." *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 812 (4th Cir. 1989).

While state law controls issues of "the validity, revocability, or enforceability of contracts generally," *Perry v. Thomas*, 482 U.S. 483, 493 n.9 (1987), the FAA "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act," *Moses H. Cone*, 460 U.S. at 24.  The FAA constitutes "a congressional declaration of liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary."  *Id.*

Accordingly, a party can compel arbitration under the FAA in lieu of further litigation by demonstrating (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) a

refusal by the parties to the agreement to arbitrate the dispute. *Adkins*, 303 F.3d at 500-01. In considering these factors, a district court must remain "mindful of the clear federal directive in support of arbitration." *Id*. at 500 (internal quotation marks omitted).

The resolution of the defendants' motion turns entirely on the second requirement: whether the parties have a written agreement purporting to cover the dispute.[2] The court **FINDS** that the Merger Agreement, the Escrow Agreement, and the Business Services Agreement contain arbitration clauses committing the parties' current dispute to arbitration. Each of those three agreements contains a broad arbitration clause. *(See, e.g.,* Merger Agreement [Docket 5-2], § 7.17 (covering "any disputes or controversies arising under this Agreement"); Escrow Agreement [Docket 5-4], § 14 (same); Business Services Agreement [Docket 5-5], § 10 ("[A]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled exclusively by arbitration . . . .")). Chandler's demand for arbitration seems to recognize this fact. The demand tracks the relief requested in the instant lawsuit and then explains that the three agreements "contain *mandatory arbitration clauses* and mandate that arbitration of *any disputes* arising under the Agreement(s) be pursuant to the rules of the American Arbitration Association (AAA) in Dallas County, Texas." (Pls.' Mem. Opp., Ex. 1 [Docket 9-1], at 6 (emphasis added).).

Without citing any authority, the plaintiffs argue that "the defense of fraud may be used to invalidate" the arbitration agreements without contravening the FAA. (Pls.' Mem. Opp. 7.) The

---

[2] Although the parties have not discussed the nexus to interstate commerce, that requirement is easily met here. *See Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265 (1995) (observing that the FAA's interstate commerce requirement is coextensive with the full reach of Congress' power under the Interstate Commerce Clause). The underlying agreements containing the arbitration clauses were between citizens of different states and concerned the interstate sale of a business and the performance of additional services.

court disagrees, as the plaintiffs fail to understand the actual impact of allegations of fraud (whether properly alleged in the Complaint or not) on an arbitration agreement.  Notably, ever since the Supreme Court's decision in *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 404 (1967), a critical distinction has been drawn between fraud in the inducement of an *arbitration clause itself* and fraud in the inducement of a *contract in general*.  *See id.*  In *Prima Paint*, the Court ruled that the "first claim (fraud in the inducement of the arbitration clause) is one for resolution by the court, and the second (fraud in the inducement of the contract generally) is for the arbitrator."  *Peoples Sec.*, 867 F.2d at 813 (citing *Prima Paint*, 388 U.S. at 402-04).[3]

In short, the plaintiffs have not demonstrated that any ground exists at law or in equity for revocation of the parties' agreement to arbitrate their disputes, including the dispute at issue in this lawsuit.  *See* 9 U.S.C. § 2.  Under the FAA, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement," the court "*shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement"  *Id.* § 3 (emphasis added).  By its terms, this provision is mandatory. *See Adkins*, 303 F.3d at 500.  Thus, "[a] district court therefore has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview."  *Id.*  Accordingly, the court **STAYS** this matter pending arbitration of the parties' dispute.

---

[3] The parties disagree as to whether West Virginia law or Texas law supplies the answer to whether the contracts containing the arbitration clauses are enforceable.  The court need not decide this question, as the plaintiffs' only theory for voiding the three arbitration clauses (fraud in the inducement) is clearly foreclosed by the Supreme Court's decision in *Prima Paint*, which is a species of the federal law of arbitrability rather than state law.  *See Peoples Sec.*, 867 F.2d at 813.

### III.    Conclusion

For the foregoing reasons, the plaintiffs' Motion to Dismiss, Transfer, or Stay [Docket 5] is

**GRANTED IN PART**.  This matter is **STAYED** and the requirements of the court's Order and

Notice [Docket 14] are **CONTINUED**.  The court **DIRECTS** the Clerk to place this case on the

inactive docket.  Finally, the court **DIRECTS** the Clerk to send a copy of this Order to counsel of

record and any unrepresented party.

ENTER:        December 3, 2010

Joseph R. Goodwin, Chief Judge