IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CATHERINE C. CHANDLER, et al.,

        Plaintiffs,

v.                                                 CIVIL ACTION NO. 2:10-cv-00839

JOURNEY EDUCATION MARKETING, INC., et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court are the Motion on Behalf of Plaintiffs to Confirm Arbitration Award [Docket 16] and Defendants' Journey Education Marketing, Inc. and Michael S. Fischlers' Motion for Leave to File a Sur-Reply [Docket 27]. For the reasons discussed below, the Motion to Confirm Arbitration Award is **GRANTED** and the Motion for Leave to File a Sur-Reply is **GRANTED**.

**I.**     **Facts and Procedural History**

The plaintiffs are former shareholders of CCV Software, Inc. ("CCV"), a West Virginia corporation that had its principal place of business in Kanawha County, West Virginia.[1] In February 2008, the plaintiffs entered into an agreement to sell CCV to defendant Journey. Pursuant to the terms of a Merger Agreement and Plan of Reorganization (the "Merger Agreement"), Journey agreed to pay $2.25 million in exchange for all of CCV's outstanding stock. At closing, Journey delivered half of that sum. The other half ($1.125 million) was to be wired at closing to "an interest bearing escrow account," and then "released by the escrow agent

---

[1] The plaintiffs are Catherine C. Chandler, Thomas C. Naerebout, Donna Hamra, and Cheryl K. Narum.

one hundred eighty (180) days from the date of Closing subject to the satisfaction of the terms and conditions of Section 5.1.13 of the Merger Agreement." (Compl. [Docket 1-2] ¶ 17.)

Plaintiff Catherine C. Chandler, individually and in her role as a representative of CCV's shareholders, separately executed an agreement concerning the escrow account (the "Escrow Agreement"). The plaintiffs claimed that Journey never formally executed the Escrow Agreement and never established or funded the escrow account. Instead, on July 1, 2008, Journey sent the plaintiffs an e-mail advising them that a "new" escrow agent had been selected, necessitating the signing of a new escrow agreement. The plaintiffs claimed that the defendants misrepresented the status of the escrow account, misleading the plaintiffs into believing that the "old" Escrow Agreement had been formally executed and that an escrow account had been funded.

Contemporaneously with the Merger Agreement and the Escrow Agreement, Journey entered into a "Business Services Agreement" with plaintiffs Chandler and Naerebout. The Business Services Agreement allowed Chandler and Naerebout to earn deferred compensation and bonuses based on the post-merger financial performance of the former CCV operations. According to the plaintiffs, Chandler and Naerebout were fraudulently induced by Journey, and by its president Michael S. Fischler, to enter into the Business Services Agreement.

Journey objected to the release of any escrowed funds to the plaintiffs 180 days after the date of closing. Specifically, Journey claimed that it was entitled to "offsets" against those funds. The plaintiffs, on the other hand, claimed that Journey wrongfully withheld the balance of the purchase price ($1.125 million) owed to them under the terms of the Merger Agreement and the Escrow Agreement. They also claimed that they were owed the compensation due to Chandler and Naerebout pursuant to the Business Services Agreement.

On February 9, 2009, Chandler, in her role as the representative of CCV's former shareholders, filed a demand for arbitration with the American Arbitration Association (the "AAA") in Dallas, Texas. Just under a year later, on January 29, 2010, the plaintiffs filed the instant lawsuit in the Circuit Court of Kanawha County, West Virginia, naming Journey and Fischler as defendants. Thereafter, the defendants timely removed the action to this court on the basis of diversity jurisdiction. The defendants then filed their Motion to Dismiss, Transfer, or Stay. The court granted this motion in part and stayed the case pending arbitration. [Docket 15].

The parties arbitrated their dispute in Dallas, Texas from September 14 to September 22, 2011. The arbitrator, Susan S. Soussan, a former Texas district judge, issued an Arbitration Award on December 2, 2011. She awarded the plaintiffs $2,619,589.33. This award included attorney's fees totaling $420,665. (Pls.' Mot. Confirm Arbitration Award [Docket 16], Ex. 3, at 17-18.) The award also directs that the sums, principal, and interest in escrow at CapitalOne be released to Dr. Chandler. (*Id.*) On December 19, 2011, the plaintiffs filed the instant motion to confirm the arbitration award. The plaintiffs represent that CapitalOne refuses to disburse the escrow account. Accordingly, the plaintiffs request that the court confirm the Arbitration Award, order the disbursement of the escrow account, and award the plaintiffs costs and expenses.

**II.     Legal Standard**

The Federal Arbitration Act ("FAA") provides that any party to an arbitration proceeding may request that a court enter an order confirming the arbitration award. 9 U.S.C. § 9; *U.S. ex rel. Watkins v. AIT Worldwide Logistics, Inc.*, 441 F. Supp. 2d 762, 766 (E.D. Va. 2006). The court must grant such an order unless the award is vacated, modified, or corrected. 9 U.S.C. § 9. Although the defendants did not move to vacate or modify the arbitration award, they argued in their response to the plaintiffs' motion that it should be vacated or modified pursuant to 9 U.S.C.

§ 10 and 9 U.S.C. § 11. *See Catz Am. Co. v. Pearl Grange Fruit Exch., Inc.*, 292 F. Supp. 549, 551 (S.D.N.Y. 1968) ("A separate motion [] to vacate the arbitrators' award is not necessary. Such relief may properly be requested in the papers submitted in opposition to a motion to confirm an arbitrators' award.").

The court's authority to review arbitration awards is substantially circumscribed. *MCI Constructors, LLC v. City of Greensboro*, 610 F.3d 849, 857 (4th Cir. 2010). The Fourth Circuit has observed that, "the scope of judicial review for an arbitrator's decision 'is among the narrowest known at law because to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all—the quick resolution of disputes and avoidance of expense and delay associated with litigation.'" *Three S Del., Inc. v. DataQuick Info. Sys., Inc.*, 492 F.3d 520, 527 (4th Cir. 2007) (quoting *Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc.*, 142 F.3d 188, 193 (4th Cir. 1998)). The party requesting that the court vacate an arbitration award carries a heavy burden to show one of the grounds specified in the Federal Arbitration Act or under the common law. *Choice Hotels Int'l, Inc. v. SM Prop. Mgmt., LLC*, 519 F.3d 200, 207 (4th Cir. 2008). Under the FAA, a court may vacate or modify an award in the following circumstances:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10. An arbitration award may also be vacated where an award fails to draw its essence from the contract, or the award evidences a manifest disregard of the law. *Choice Hotels Int'l, Inc.*, 519 F.3d at 207. However, an award cannot be vacated because the arbitrator

4

misinterpreted a contract or made an error of law. *MCI Constructors, LLC*, 610 F.3d at 861. If the arbitrator is arguably construing or applying the contract, the award will not be disturbed. *Id.*

In the instant dispute, the defendants claim that the arbitrator was partial to the plaintiffs. To establish that there was evident partiality in the arbitrator, the defendants must "demonstrate that a reasonable person would have to conclude that an arbitrator was partial to the other party to the arbitration." *Three S Del., Inc.*, 492 F.3d at 530 (quoting *ANR Coal Co., Inc. v. Cogentrix of N.C., Inc.*, 173 F.3d 493, 500 (4th Cir. 1999)). To assess whether the defendants have established partiality, I look to the following factors:

> (1) the extent and character of the personal interest, pecuniary or otherwise, of the arbitrator in the proceedings; (2) the directness of the relationship between the arbitrator and the party he is alleged to favor; (3) the connection of that relationship to the arbitrator; and (4) the proximity in time between the relationship and the arbitration proceeding.

*Id.* When assessing each factor, the court should determine whether the alleged bias is "direct, definite and capable of demonstration rather than remote, uncertain or speculative and whether the facts are sufficient to indicate improper motives on the part of the arbitrator." *Id.*

### III. Analysis

#### a. Venue

The defendants first challenge the plaintiffs' request that the court confirm the arbitration award by asserting that venue is inappropriate. The Merger Agreement contains the following forum selection clause: "Arbitration shall proceed in Dallas County, Texas and the parties agree to be bound by the arbitrator's award, which may be filed in the appropriate Texas court. The parties consent to the jurisdiction of Texas courts for enforcement of this determination by arbitration." (Defs.' Resp. Pls.' Mot. Confirm Arbitration Award [Docket 24-1], Ex. B, at 30.) The Escrow Agreement contains an identical provision. (*Id.* [Docket 24-2], Ex. F, at 25.) This clause, according to the defendants, mandates that the motion to confirm be brought in Texas.

The defendants' argument is unpersuasive. Neither the forum selection clause nor the FAA prevents this court from confirming the arbitration award. The court must give effect to the written expression of the parties' intent when interpreting the forum selection clause. *Southwest Intelecom, Inc. v. Hotel Networks Corp.*, 997 S.W.2d 322, 324 (Tex. App. 1999). A forum selection clause can be either mandatory or permissive. *Moody v. Aqua Leisure Int'l*, No. H-10-1961, 2010 WL 4955397, at *2 (S.D. Tex. Nov. 30, 2010). A mandatory clause "must go beyond establishing that a particular forum will have jurisdiction and must clearly demonstrate the parties' intent to make that jurisdiction exclusive." *City of New Orleans v. Mun. Admin. Serv.*, 376 F.3d 501, 504 (5th Cir. 2004). Clauses in which the parties "consent" or "submit" to the jurisdiction of a forum are permissive. *In re Wilmer Cutler Pickering Hale & Dorr LLP*, No. 05-08-01395, 2008 WL 5413097, at *4 (Tex. App. 2008). In this case, the forum selection clause in the Merger Agreement and Escrow Agreement does not contain explicit language indicating that the parties intended for the Texas courts to have exclusive jurisdiction. *See Mabon Ltd. v. Afri-Carib Enter., Inc.*, 29 S.W.3d 291, 297 (Tex. App. 2000) ("While this clause stipulates that Nigeria 'shall have venue,' it does not provide for exclusive jurisdiction in Nigeria; rather, the language is permissive in nature, indicating that the parties *may* bring suit in Nigeria but are not *required* to do so."); *Southwest Intelecom, Inc. v. Hotel Networks Corp.*, 997 S.W.2d 322, 325 (Tex. App. 1999) ("The plain language of the jurisdiction clause neither prohibits litigation in jurisdictions other than Ramsey County, Minnesota, nor provides that Minnesota courts have exclusive jurisdiction over all claims arising out of the contract."). Accordingly, I **FIND** that the parties did not intend for the forum selection clause to be exclusive, and therefore it does not prevent this court from confirming the award.

Venue may be affected not only by the parties' agreement, but also by the FAA. Section 9 of the FAA is the venue provision for the confirmation of arbitration awards. It states:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.

9 U.S.C. § 9. The U.S. Supreme Court has held that the above provision, along with 9 U.S.C. §§ 10-11 are permissive, meaning they permit such a motion either where the award was made or in any district proper under the general venue statute. *Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*, 529 U.S. 193, 195 (2000). Moreover, the Court explained that a district court that had the power to stay a case pending arbitration under 9 U.S.C. § 3, also has the power to confirm the arbitration award. *Id.* at 202 (citing *Marine Transit Corp. v. Dreyfus*, 284 U.S. 263, 275-76 (1932)). In short, both the forum selection clause and § 9 allow the confirmation of the arbitration award to be brought in Texas courts, but neither requires it. And venue is proper here because this court previously stayed the case pending the arbitration.

    b. *Evident Partiality*

Next, the defendants argue that if the court finds venue proper, the award should be vacated or modified because of the arbitrator's evident partiality. *See* 9 U.S.C. § 10 ("[T]he United States court . . . may make an order vacating the award . . . where there was evident partiality or corruption in the arbitrators, or either of them."). The defendants do not identify any personal interest that the arbitrator had in the proceedings. Specifically, there is no allegation that the arbitrator had a pecuniary interest in the outcome. There is also no allegation that the arbitrator had any personal or professional relationship with any of the plaintiffs or individuals

7

associated with the plaintiffs. Rather, the defendants point to several things that happened during the arbitration and claim that they demonstrate that the arbitrator was partial. The defendants allege: (1) the arbitrator awarded the plaintiffs $420,665 for attorney's fees; (2) the arbitrator developed a theory, questioned witnesses about her theory, and then ruled in favor of the plaintiffs based on this theory; and (3) the arbitrator ignored monetary concessions made by the plaintiffs. These allegations amount to complaints about how the arbitrator conducted the arbitration and its results. They are insufficient to demonstrate evident partiality.

The defendants first contend that the arbitrator's attorney's fees award was based on *ex parte* communication prohibited by the AAA Rules of Commercial Arbitration. Specifically, the plaintiffs submitted a brief on attorney's fees along with their counsel's billing statement to the arbitrator on October 31, 2011. The defendants claim that during the course of the arbitration they did not see the plaintiff's brief and billing statement and they did not have an opportunity to respond to it.

Although the defendants were not able to read and respond to the brief, they were put on notice that the plaintiffs would submit this brief. Prior to issuing the arbitration award, the arbitrator sent an email to each party's counsel, explaining that post-hearing briefs were due on October 31, 2011, and the parties could file their attorney's fees briefs either on October 31, 2011, or five days after the award on the merits was issued. (Pls.' Reply to Resp. to Pls' Mot. Confirm Arbitration Award [Docket 26-2], Ex. 2, at 1.) The arbitrator never indicated that she would permit the other party to respond to the briefing, and the defendants did not complain that such an opportunity was not provided. Accordingly, the defendants' current complaint is directed to the wrong forum. This court is not in a position to second guess the arbitrator's adherence to the AAA procedures. In addition, the court cannot find that a reasonable person

would have to conclude that an arbitrator was partial just because its actions may have violated AAA procedures and such violation allegedly benefited one party. A finding of partiality based on such evidence would be purely speculative and not definite or capable of demonstration. *See Three S Del., Inc. v. DataQuick Info. Sys., Inc.*, 492 F.3d 520, 530 (4th Cir. 2007).

The defendants also urge the court to vacate or modify the award based on partiality because the arbitrator developed a theory, questioned witnesses about her theory, and then ruled in favor of the plaintiffs based on this theory. The defendants maintain that a key issue in the arbitration was whether Journey owed Little Palm Consulting, LLC any money under the Business Services Agreement ("BSA"). The arbitrator apparently rejected the plaintiffs' theory that the payments under the BSA were "ironclad, deferred compensation that was guaranteed no matter what." (Mem. Supp. Defs.' Resp. to Pls.' Mot. Confirm Arbitration Award [Docket 25], at 8.) Instead, the defendants claim that the arbitrator found that the plaintiffs were entitled to relief based on a wrongful termination theory.

In their Amended and Supplemental Statement of Claims, the plaintiffs alleged that Journey stopped making payments pursuant to the BSA, leaving a balance of approximately $600,000. (Defs.' Resp. Pls.' Mot. Confirm Arbitration Award [Docket 24-2], Ex. F, at 8.) In their "Relief Sought," the plaintiffs asked for the balance of the BSA, plus reimbursement for cost of health insurance and prejudgment interest to date of recovery. (*Id.* at 12.) The plaintiffs also sought bonus payments provided for by the BSA based on the financial performance of CCV. (*Id.*) Ultimately, the arbitrator awarded the plaintiffs $983,331 as damages for breach of the BSA.

Accordingly, it is evident that the arbitrator did not go on a fishing expedition to award relief not requested by the plaintiffs. Rather, as the plaintiffs explained, they "asserted a breach

of the BSA, and that is specifically what the Arbitrator found." (Pls.' Reply Defs.' Resp. Pls.' Mot. Confirm Arbitration Award [Docket 26], at 12.) And if the theory upon which the award of relief was granted differs somewhat from the plaintiffs' theory, this is not inappropriate and it does not demonstrate partiality. In fact, it is well settled that "arbitrators are not required to disclose the basis upon which their awards are made and courts will not look behind a lump-sum award in an attempt to analyze their reasoning process." *MCI Constructors, LLC v. City of Greensboro*, 610 F.3d 849, 862 (4th Cir. 2010). This suggests that if the arbitrator discloses her reasoning and it differs from the reasoning set forth by the parties, the difference alone cannot form the basis for a finding of evident partiality. In addition, the arbitrator's questioning of witnesses does not indicate partiality. Because arbitration is a more informal process, the arbitrator may "act affirmatively to simplify and expedite the proceedings." *Ballantine Books, Inc. v. Capital Distrib. Co.*, 302 F.2d 17, 21 (2d Cir. 1962). The arbitrator's actions in regards to the plaintiff's breach of the BSA claim do not even raise the specter of bias or partiality.

Finally, the defendants assert that the arbitrator ignored monetary concessions made by the plaintiffs. In particular, at arbitration the defendants claimed that the plaintiffs misrepresented that CCV had $79,000 of working capital at the time of the merger. According to the defendants, plaintiffs' counsel conceded a $5,000 mistake. In addition, the plaintiffs' accounting witness, Thomas Naerabout, conceded that assets were overstated by $33,000 and that liabilities were overstated by $15,000. The defendants claim that the arbitrator did not award the defendants any offsets that they were entitled to, and that this contributes to the "mounting evidence of bias and prejudice." (Mem. Supp. Defs.' Resp. to Pls.' Mot. Confirm Arbitration Award [Docket 25], at 10.) The defendants cite additional examples of actions that they claim demonstrate partiality: (1) the arbitrator refused to continue the arbitration after

Journey's lead counsel, Mr. Schwartzstein, was hospitalized; (2) the arbitrator asked misleading questions to one of Journey's witnesses; and (3) the arbitrator questioned Journey's accounting expert in a way that was helpful to the plaintiffs.

The plaintiffs have responded to each argument in turn. As for the offsets, the plaintiffs explain that Journey argued at the arbitration that CCV did not prepare certain financial documents in accordance with Generally Accepted Accounting Principles ("GAAP"). Therefore, Journey claimed that the plaintiffs misrepresented their assets, which allowed Journey to claim offsets. According to the plaintiffs, the arbitrator concluded that the plaintiffs were not required to prepare documents in accordance with GAAP, so the "offset claim was flawed at its very core." (Pls.' Reply Defs.' Resp. Pls.' Mot. Confirm Arbitration Award [Docket 26], at 14.) The plaintiffs also assert that the defendants mischaracterize the arbitrator's leniency with scheduling concerns as bias. Additionally, the plaintiffs highlight that Mr. Schwartzstein still attended the hearing and argued a motion for partial directed verdict. Moreover, Journey was represented by two other attorneys throughout the trial.

Irrespective of the merits of the defendants' offset claim, it fails to demonstrate evident partiality. The fact that the arbitrator may have made a mistake that benefited one party does not demonstrate that the arbitrator was partial to that party. In addition, misinterpretation of a contract and an error of law do not constitute grounds to vacate the award. *MCI Constructors, LL*, 610 F.3d at 861. To prove that an award should be overturned for manifest disregard for the law, the party must show that the arbitrator was "aware of the law, understood it correctly, found it applicable to the case before him, and yet chose to ignore it in propounding his decision." *Long John Silver's Rests., Inc. v. Cole*, 514 F.3d 345, 349 (4th Cir. 2008). The defendants have not even attempted to make the above showing. In addition, the arbitrator's decision not to

continue the arbitration was within her sound discretion and again does not tend to prove that she was partial.

In total, the defendants have not demonstrated that a reasonable person would have to conclude that the arbitrator was partial to the plaintiffs. *See Three S Del., Inc.*, 492 F.3d at 530. As I explained earlier, the defendants have not shown any personal or pecuniary interest in the proceedings or relationship to any of the parties. The alleged bias is not direct, definite, or capable of demonstration. *Id.* The fact that the arbitrator ruled against the defendants on certain issues does not demonstrate partiality. *Id.* at 530. Accordingly, I **FIND** that the defendants have not shown that any of the circumstances permitting the court to vacate or modify an arbitration award were present, and **GRANT** the plaintiffs' Motion to Confirm. Moreover, I **ORDER** the disbursement of the escrow account at CapitalOne.

The plaintiffs also request that the court award them costs and expenses against the defendants for having to confirm the award. The plaintiffs fail, however, to explain their basis for such an award, and accordingly it is **DENIED**.

The court will consider whether it has personal jurisdiction over Michael S. Fischler upon a renewed motion. If the defendants bring such a motion, the court directs the defendants' attention to the Fourth Circuit's opinion *Consulting Engineers Corp. v. Geometric, Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009), which outlines factors to consider in determining whether the defendant has purposefully availed itself of the forum state.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: May 15, 2012

Joseph R. Goodwin, Chief Judge

12