IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CATHERINE C. CHANDLER, et al.,

        Plaintiffs,

v.                      CIVIL ACTION NO. 2:10-cv-00839

JOURNEY EDUCATION MARKETING, INC., et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is the Renewed Motion to Dismiss for Lack of Personal Jurisdiction by Defendant Michael Fischler and Incorporated Memorandum of Law [Docket 37] ("Renewed Motion to Dismiss"). The parties have fully briefed this issue. The parties have also fully briefed the two issues on which the court requested supplemental briefing: the effect of the arbitration award on the pending claims against Fischler and the effect of the automatic stay resulting from Journey's bankruptcy filing on the pending claims against Fischler. Also pending before the court is the Plaintiffs' Motion for Leave to File Amended Complaint [Docket 44]. For the reasons set forth below, the defendant's Renewed Motion to Dismiss [Docket 37] is **DENIED** and the plaintiffs' Motion for Leave to File Amended Complaint [Docket 44] is **DENIED**.

**I.    Factual Background**

The plaintiffs, Catherine C. Chandler, Thomas C. Naerebout, Donna Hamra, and Cheryl K. Narum, are former shareholders of CCV Software, Inc. ("CCV"), a West Virginia corporation with its principal place of business in Kanawha County, West Virginia. In February 2008, the

plaintiffs entered into an agreement to sell CCV to Journey Education Marketing, Inc. ("Journey"). Pursuant to the terms of a Merger Agreement and Plan of Reorganization (the "Merger Agreement"), Journey agreed to pay $2.25 million in exchange for all of CCV's outstanding stock. At closing, Journey delivered half of that sum. The other half ($1.125 million) was to be wired at closing to "an interest bearing escrow account," and then "released by the escrow agent one hundred eighty (180) days from the date of Closing subject to the satisfaction of the terms and conditions of Section 5.1.13 of the Merger Agreement." (Compl. [Docket 1-2] ¶ 17.)

Chandler, individually and in her role as a representative of CCV's shareholders, separately executed an agreement concerning the escrow account (the "Escrow Agreement"). The plaintiffs claim that Journey never formally executed the Escrow Agreement and never established or funded the escrow account. Instead, on July 1, 2008, Journey sent the plaintiffs an e-mail advising them that a "new" escrow agent had been selected, necessitating the signing of a new escrow agreement. The plaintiffs claimed that the defendants misrepresented the status of the escrow account, misleading the plaintiffs into believing that the "old" Escrow Agreement had been formally executed and that an escrow account had been funded.

Contemporaneously with the Merger Agreement and the Escrow Agreement, Journey entered into a "Business Services Agreement" with plaintiffs Chandler and Naerebout. The Business Services Agreement allowed Chandler and Naerebout to earn deferred compensation and bonuses based on the post-merger financial performance of the former CCV operations. According to the plaintiffs, Chandler and Naerebout were fraudulently induced by Journey, and by its president Michael S. Fischler ("Fischler"), to enter into the Business Services Agreement.

Moreover, all of the plaintiffs allege that both Journey and Fischler fraudulently induced the plaintiffs to enter into the Merger Agreement and Escrow Agreement.

One hundred and eighty days after the closing, Journey objected to the release of any escrowed funds to the plaintiffs. Specifically, Journey claimed that it was entitled to "offsets" against those funds. The plaintiffs, on the other hand, claimed that Journey wrongfully withheld the balance of the purchase price owed to them under the terms of the Merger Agreement and the Escrow Agreement ($1.125 million). The plaintiffs also claimed that they were owed the compensation due to Chandler and Naerebout pursuant to the Business Services Agreement.

## II.     Procedural History

On February 9, 2009, Chandler, in her role as the representative of CCV's former shareholders, filed a demand for arbitration with the American Arbitration Association in Dallas, Texas. Just under a year later, on January 29, 2010, the plaintiffs filed the instant lawsuit in the Circuit Court of Kanawha County, West Virginia, naming Journey and Fischler as defendants. Thereafter, the defendants timely removed the action to this court on the basis of diversity jurisdiction. The defendants then filed a Motion to Dismiss, Transfer, or Stay [Docket 5], which the court granted in part and stayed the case pending arbitration [Docket 15]. The court did not reach the issue of personal jurisdiction over Fischler at that time.

The parties arbitrated their dispute in Dallas, Texas from September 14 to September 22, 2011. The arbitrator, Susan S. Soussan, a former Texas district judge, issued an Arbitration Award on December 2, 2011, awarding the plaintiffs $2,619,589.33, which included attorney's fees totaling $420,665.00. (Pls.' Mot. Confirm Arbitration Award [Docket 16], Ex. 3, at 17-18.) The award also directed that the sums, principal, and interest in escrow at CapitalOne be released to Chandler. (*Id.*) On December 19, 2011, the plaintiffs filed a motion to confirm the arbitration

award [Docket 29], alleging that CapitalOne refused to disburse the escrow account. The court granted the motion to confirm and ordered the disbursement of the escrow account at CapitalOne, and reserved the question of personal jurisdiction over Fischler until a renewed motion was filed.

On June 19, 2012, Fischler filed the Renewed Motion to Dismiss for lack of personal jurisdiction. On July 11, 2012, the plaintiffs filed a Motion for Leave to File Amended Complaint to add certain claims, including fraudulent transfer against Fischler and a theory of successor liability against Digital River, Inc. ("Digital River").[1] On July 31, 2012, Journey filed for Chapter 7 bankruptcy. The court subsequently asked the parties for supplemental briefing on two issues: the effect of the arbitration award on the plaintiffs' pending claims against Fischler, and the effect of the automatic stay resulting from Journey's bankruptcy filing on the plaintiffs' pending claims against Fischler. Both parties have fully briefed all of the issues currently before the court.

### III. The Court has Personal Jurisdiction over Fischler

Fischler has renewed his motion to dismiss for lack of personal jurisdiction pursuant to FED. R. CIV. P. 12(b)(2). Fischler asserts that "he has absolutely no connection to West Virginia sufficient to subject him to jurisdiction." (Mot. to Dismiss [Docket 37], at 2.) He argues that the Complaint is "largely devoid of any allegations regarding Fischler, personally" and that the only two allegations regarding Fischler is that he is a resident of Dallas, Texas, and that he either made or was aware of some alleged misrepresentations. (*Id.* at 2, 4.) The plaintiffs argue that Fischler actively pursued the purchase of CCV, a West Virginia corporation, traveled to West Virginia and made false representations to at least one West Virginia plaintiff and former

---

[1] The amended complaint alleges that on or about August 1, 2010, Digital River purchased all or most of the assets of Journey and assumed the liabilities of the arbitration and litigation between the plaintiffs and Journey. (*See* Mot. for Leave to File Amended Compl., Ex. 1 [Docket 45-1], ¶¶ 65-72.)

4

employee-shareholder of CCV about her continuing employment in West Virginia with CCV. (Resp. on Behalf of Pls. to Def. Michael S. Fischler's Mot. to Dismiss for Lack of Personal Jurisdiction [Docket 42], at 2.)

### A. Legal Standard

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff ultimately bears the burden of proving to the district court judge the existence of jurisdiction over the defendant by a preponderance of the evidence." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp*, 416 F.3d 290, 294 (4th Cir. 2005). When the court addresses the jurisdictional question "on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Id.*; *see also Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). "Under such circumstances, courts 'must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.'" *New Wellington*, 416 F.3d at 294 (quoting *Combs*, 886 F.2d at 676).

For a district court to validly assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied. *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993). First, a state long-arm jurisdiction statute must authorize jurisdiction over the non-resident defendant. Second, the court's exercise of personal jurisdiction over the non-resident defendant must "comport with the Due Process Clause." *In re Celotex Corp.*, 124 F.3d 619, 627 (4th Cir. 1997). "Because the West Virginia long-arm statute is coextensive with the full reach of due process, it is unnecessary in this case to go through the normal two-step formula for determining the existence of personal jurisdiction." *Id.* at 627-28 (internal citations omitted). Consequently,

the statutory inquiry merges with the Constitutional inquiry. *See id*. Accordingly, the court's inquiry centers on whether exercising personal jurisdiction over the defendants is consistent with the Due Process Clause.

"A court's exercise of personal jurisdiction over a non-resident defendant is consistent with the Due Process Clause if the defendant has sufficient 'minimum contacts' with the forum such that requiring the defendant to defend its interests in the forum does not 'offend traditional notions of fair play and substantial justice.'" *In re Celotex*, 124 F.3d at 628 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). The Fourth Circuit has applied a three-part test to determine whether specific jurisdiction exists: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Mitrano v. Hawes*, 377 F.3d 402, 407 (4th Cir. 2004) (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 713 (4th Cir. 2002)). The "touchstone" of the specific jurisdiction analysis is whether the defendant "engaged in some activity purposefully directed toward the forum state." *In re Celotex*, 124 F.3d at 628 (internal quotations omitted).

  **B.** **Analysis**

The plaintiffs have made a sufficient showing that the court has specific jurisdiction over Fischler. First, with regard to purposeful availment, the Fourth Circuit has recognized a variety of nonexclusive factors in determining whether a defendant has purposefully availed himself of the privilege of conducting business under the laws of the forum state. *See Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009). One of the factors is "whether the defendant reached into the forum state to solicit or initiate business." *Id.* Another is "whether the

6

defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship." *Id.*

The complaint alleges that "the defendants" fraudulently misrepresented to the plaintiffs certain facts, and fraudulently induced them to enter into the Merger Agreement, Escrow Agreement, and Business Services Agreement.[2] (Compl. [Docket 1-2] ¶¶ 56-61.) One of the plaintiffs, Donna Hamra, is a West Virginia resident. (*Id.* ¶ 6.) As previously noted, CCV is a West Virginia corporation. (*Id.* ¶ 4.) Therefore, the complaint alleges, *inter alia*, that Fischler made certain fraudulent misrepresentations to a West Virginia resident and fraudulently induced a West Virginia resident to enter into a Merger Agreement and Escrow Agreement to sell a West Virginia corporation to Journey.[3] During the arbitration proceedings, Fischler testified that he met with Hamra in Charleston, West Virginia, and the testimony at issue related to the allegation of fraudulent misrepresentation and inducement. Thus, sufficient evidence exists to find that Fischler purposefully availed himself of the privilege of conducting business under the laws of West Virginia.

Second, the plaintiffs' claims arise, at least in part, out of Fischler's alleged activities directed at West Virginia. The plaintiffs' claims arise generally out of Fischler's pursuit of Journey's purchase of CCV. More specifically, Hamra's claims arise out of Fischler's visit to Charleston, West Virginia and speaking with her, where he allegedly made fraudulent misrepresentations and induced her to enter into the Merger Agreement and Escrow Agreement.

Finally, the exercise of personal jurisdiction over Fischler is constitutionally reasonable. Factors that the court considers are:

---

[2] The complaint is written such that when only certain defendants are included in the allegations, the complaint uses the name of that defendant. Thus, when the complaint references "defendants" as a whole, it includes Fischler.

[3] Hamra was not a party to the Business Services Agreement.

> (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies.

*Consulting Eng'rs. Corp.*, 561 F.3d at 279. The burden on Fischler of litigating in West Virginia certainly weighs against such a finding, as he is a resident of Texas. However, the remaining factors weigh in favor of exercising personal jurisdiction in the Southern District of West Virginia. West Virginia has an interest in adjudicating disputes regarding misrepresentations to its residents and disputes over the purchase of a West Virginia corporation. The plaintiffs' and states' interests are furthered by resolution in this court, as the parties have already litigated in this court for over two years and the court is familiar with the facts, procedural history, and legal issues involved in the instant case.

Accordingly, I **FIND** that the court has personal jurisdiction over the defendant Michael Fischler, and the Renewed Motion to Dismiss [Docket 37] is **DENIED**.

## IV. The Arbitration Award does not Preclude the Plaintiffs' Pending Claims Against Fischler

The arbitration award presents an issue of *res judicata* and collateral estoppel. The parties agree, and the court also finds, that the law for *res judicata* and collateral estoppel are sufficiently similar under West Virginia, Texas, and federal law, such that no choice of law analysis is necessary. A lawsuit is barred by *res judicata* if three elements are satisfied:

> First, there must have been a final adjudication on the merits in the prior action by a court having jurisdiction of the proceedings. Second, the two actions must involve either the same parties or persons in privity with those same parties. Third, the cause of action identified for resolution in the subsequent proceeding either must be identical to the cause of action determined in the prior action or must be such that it could have been resolved, had it been presented, in the prior action.

*Slider v. State Farm Mut. Auto Ins. Co.*, 210 W. Va. 476, 480 (2001) (quoting *Blake v. Charleston Area Med. Ctr., Inc.*, 201 W. Va. 469 (1997); *see also Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). Collateral estoppel requires a showing that:

> (1) The issue previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*State ex rel. McGraw v. Johnson & Johnson*, 226 W. Va. 677, 688 (2010) (quoting *State v. Miller*, 194 W. Va. 3 (1995). Arbitration judgments are entitled to preclusive effect. *See Rashid v. Schenck Constr. Co.*, 190 W. Va. 363, 366-67 (1993); *Davis v. Chevy Chase Fin., Ltd.*, 667 F.2d 160, 172 (D.C. Cir. 1981).

Here, neither *res judicata* nor collateral estoppel precludes the claims against Fischler. Fischler was not a party to the arbitration agreement but appeared at the arbitration as Journey's representative. Fischler was thus not a party to the arbitration proceeding. Moreover, under collateral estoppel, the arbitrator did not "actually resolve" the issue of fraud and fraudulent inducement on the merits of the claims. Nor, under *res judicata*, was there a prior final adjudication "on the merits" of the fraud claim. The arbitrator directed the verdict in favor of Journey on the fraud claims not on the merits, but because she concluded that any damages claimed based on fraud would be the same damages that the plaintiffs were entitled to under breach of contract. (Supp. Br. Regarding Effect of Arb. on Claims Against Def. Michael S. Fischler, Ex. 1 [Docket 43-1].) The arbitrator's decision thus did not determine whether fraud or fraudulent inducement had actually occurred. Therefore, I **FIND** that the claims against Fischler are not precluded by either *res judicata* or collateral estoppel.

## V. The Automatic Stay Provision in 11 U.S.C. § 362(a)(1) does not Apply to the Pending Claims Against Fischler

Although their underlying arguments differ, both parties agree that the automatic stay provision in the United States Bankruptcy Code, 11 U.S.C. § 362(a)(1), pursuant to Journey's Chapter 7 bankruptcy, does not apply to the plaintiffs' pending claims against Fischler. Fischler has not moved the bankruptcy court for an injunction under 11 U.S.C. § 105 and that provision is therefore not at issue here.

### A. The Court has Authority to Stay the Case Against Fischler

The court "continues to have jurisdiction over this action inasmuch as the automatic stay provisions of [11 U.S.C. § 362] merely suspend proceedings and do not divest the district court of subject matter jurisdiction." *Holland v. High Power Energy*, 248 B.R. 53, 56 (S.D. W. Va. 2000). "[W]hile it is correct that the bankruptcy court is the exclusive forum to consider a motion for relief from the automatic stay, the district court retains jurisdiction independent of the bankruptcy court to determine whether a pending civil action is subject to the automatic stay." *Id.*

### B. The Automatic Stay does not Apply to the Pending Claims Against Fischler

11 U.S.C. § 362(a)(1) provides, in relevant part:

(a) . . . a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of—
(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose the commencement of the case under this title.

11 U.S.C. § 362(a)(1). As the language of the statute indicates, and as the Fourth Circuit has held, "[s]ubsection (a)(1) is generally said to be available only to the debtor, not third party defendants or co-defendants." *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986);

*see also Westfield Ins. Co. v. Cazon, LLC*, No. 2:12-cv-585, 2012 WL 3637396, at *3 (S.D. W. Va. Aug. 22, 2012).

However, a narrow exception to this general rule exists: where "unusual circumstances" are involved, the stay imposed by § 362(a)(1) may be expanded to include non-debtor co-defendants. *A.H. Robins Co.*, 788 F.2d at 999; *see also Winters v. George Mason Bank*, 94 F.3d 130, 133-34 (4th Cir. 1996). In particular, *A.H. Robins Co.* explained that an unusual situation "arises when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *A.H. Robins Co.*, 788 F.2d at 999; *see also Kreisler v. Goldberg*, 478 F.3d 209, 213 (4th Cir. 2007). The Fourth Circuit provided one illustration: "a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case." *A.H. Robins Co.*, 788 F.2d at 999. Thus, "unusual circumstances exist where the claim clearly arises out of the defendant's actions in his capacity as the debtor's officer, and he is undisputedly entitled to indemnity." *In re Bidermann Indus. U.S.A., Inc.*, 200 B.R. 779, 784 (Bankr. S.D.N.Y. 1996). "Conversely, unusual circumstances do not exist where the debtor's insider is independently liable, the right to indemnity is not absolute, and the continuation of the suit will not interfere with the bankruptcy." *Id.*

The claims against Fischler are not brought against him in his official capacity, but rather in his individual capacity. The Fourth Circuit noted that the "unusual circumstances" exception does not apply to the situation "where the third party defendant was 'independently liable as, for example, where the debtor and another are joint tort feasors or where the nondebtor's liability rests upon his own breach of duty.'" *A.H. Robins Co.*, 788 F.2d at 999 (internal citations

11

omitted); *see also In re Bidermann Indus. U.S.A., Inc.*, 200 B.R. at 784; *CAE Indus. Ltd. v. Aerospace Holdings Co.*, 116 B.R. 31, 33 (S.D.N.Y. 1990)).

Fischler argues that because Journey's corporate Bylaws, § 8.08, include a broad indemnity provision pursuant to which Fischler is entitled to full indemnity from Journey, *A.H. Robins Co.* supports extending the stay to Fischler. The court disagrees. Simply because Fischler may be entitled to contribution or indemnity from Journey does not call for expansion of the automatic stay imposed by § 362(a)(1). *See Doyle v. Fleetwood Homes of Va., Inc.*, No. 2:08-1442, 2009 WL 1210697, at *2 (S.D. W. Va. Apr. 30, 2009); *Holland*, 248 B.R. at 59. Here, Fischler is not entitled to "absolute indemnity." Section 8.08 of Journey's Bylaws state, in part, that "[t]he corporation's obligations under this paragraph include, but are not limited to, the convening of any meeting, and the consideration of any matter thereby, required by statute in order to determine the eligibility of an officer or director for indemnification." (Def.'s Br. on Effect of Automatic Stay on Pending Claims Against Michael Fischler, Ex. A [Docket 59-1], at 13.) At least one court has found that where entitlement to indemnification is determined only after review, the party is not "absolutely entitled to indemnity." *CAE Indus. Ltd.*, 116 B.R. at 33.

A review of the circumstances surrounding *A.H. Robins Co.* also leads to the conclusion that the instant case is not unusual. *A.H. Robins Co.* involved thousands of product liability suits, which were stayed upon the filing of Robins' bankruptcy. *See A.H. Robins Co.*, 788 F.2d at 996. The plaintiffs attempted to sever their actions and continue against the non-bankrupt officers in their individual capacities. *Id.* Based on this, the *Robins* court found that the "officers' interests were so closely intertwined with those of the debtor could be said to be the real party in interest," and allowing the plaintiffs to proceed "would risk the result of inconsistent judgments that may unfairly impact upon limited insurance proceeds." *Id.* at 996-1001. Such unusual

12

circumstances simply do not exist in the instant case. Journey is not facing a multiplicity of lawsuits, and Fischler was named as a defendant in his individual capacity from the beginning. Therefore, I **FIND** that the automatic stay does not apply to the plaintiffs' pending claims against Fischler and the case will proceed.

## VI. The Plaintiffs do not Have Standing to Bring the New Claims in the Amended Complaint

The plaintiffs have moved for leave to file an amended complaint to add certain claims against Fischler and Digital River. Count II, breach of fiduciary duty, and Count III, conversion, would be amended to include allegations regarding the sale of Journey's assets to Digital River. The new Count IV alleges fraudulent transfer of corporate assets under the Uniform Fraudulent Transfer Act (UFTA) and asks the court to avoid the transfer, attach the assets transferred or other property of the transferees, and/or issue an attachment against the assets. The new Count V names Digital River as a defendant under a successor liability theory.

Fischler has repeatedly argued that under *Nat'l Am. Ins. Co. v. Ruppert Landscaping Co.*, 187 F.3d 439 (4th Cir. 1999), the plaintiffs do not have standing to assert these claims because they belong to the trustee in bankruptcy. The plaintiffs have not argued otherwise. In *Nat'l Am. Ins. Co.*, the insurance companies pursued a variety of counts against a company in Chapter 7 bankruptcy, including successor liability, tortious interference, and statutory and common law conspiracy. *Id.* at 441. The district court granted summary judgment to the bankrupt company, finding that the insurance companies lacked standing to bring these claims. *Id.* The Fourth Circuit agreed, noting that the insurance companies' claims depend on showing fraud; the underlying focus was fraudulent conveyance, and only the trustee has standing to bring that claim. *Id.*; *see also Poth v. Russey*, 99 F. App'x 446, 457-58 (4th Cir. 2004) (finding that fraudulent conveyance claims belong to the trustee and, where claims share the same underlying

focus, the claim belongs to the trustee even if it does not contain elements identical to a fraudulent conveyance claim). The amended claims in the instant case are similar, depending on a showing of fraudulent conveyance for liability.

Although courts should freely grant plaintiffs leave to amend complaints, such leave should be denied when the amendment would be futile. *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999). Here, the amendment would be futile, as the court would only subsequently dismiss the amended claims based on fraudulent conveyance for lack of standing. Accordingly, the plaintiffs' Motion for Leave to File Amended Complaint [Docket 44] is **DENIED.**

### VII. Conclusion

In sum, I **FIND** that the court has personal jurisdiction over the defendant Michael Fischler, and Fischler's Renewed Motion to Dismiss [Docket 37] is accordingly **DENIED.** I further **FIND** that the arbitration award does not preclude the claims against Fischler under either *res judicata* or collateral estoppel, and that the automatic stay provision in the United States Bankruptcy Code, 11 U.S.C. § 362(a)(1), does not apply to the plaintiffs' claims against Fischler, and the case will thus proceed. Finally, because the plaintiffs have no standing to bring the new claims under their amended complaint, the plaintiffs' Motion for Leave to File Amended complaint [Docket 44] is hereby **DENIED.**

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:       September 21, 2012

Joseph R. Goodwin, Chief Judge