IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CATHERINE C. CHANDLER, et al.,

            Plaintiffs,

v.                                        CIVIL ACTION NO. 2:10-cv-00839

MICHAEL S. FISCHLER,

            Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Defendant's Motion to Dismiss or Transfer [Docket 69] and Defendant Michael S. Fischler's Motion to Enforce Arbitration and to Transfer [Docket 74]. The plaintiffs have filed a response to both motions, the defendant has filed a reply to the Motion to Enforce Arbitration and to Transfer, and the deadline to file a reply to the Motion to Dismiss or Transfer has passed. These motions are ripe for review. For the reasons discussed below, Fischler's motion to enforce arbitration and to transfer [Docket 74] is **GRANTED**, and the parties are to arbitrate the claims. Fischler's motion to dismiss or transfer [Docket 69] is **DENIED as moot**.

**I.**       **Background**

The general background of the case is well-known to the parties. For purposes of this Memorandum Opinion and Order, the background as set forth in the court's September 21, 2012 Memorandum Opinion and Order [Docket 62] is hereby **ADOPTED**.

**II.**      **Procedural History**

1

On February 9, 2009, the plaintiffs initiated an arbitration proceeding before the American Arbitration Association ("AAA"), naming Journey as sole respondent. On January 29, 2010, the plaintiffs filed the instant Complaint, which set forth, in part, the following allegations:

> 47. On February 9, 2009, plaintiffs submitted this dispute to the American Arbitration Assocation for resolution.
>
> 48. In the course of the arbitration of this dispute, Journey has asserted (formally and informally) that certain issues raised by plaintiffs in the arbitration are not within the scope of the arbitration provisions contained in the Merger Agreement, the Escrow Agreement and the Business Services Agreement.
>
> 49. Journey contends that only the claims regarding the Escrow Agreement are subject to arbitration.
>
> 50. Accordingly, plaintiffs bring this action to obtain a declaration whether the subject arbitration provision(s) govern *all of plaintiffs' claims against Journey* or whether this Court has proper jurisdiction over all or some of plaintiffs' claims.

(Compl. [Docket 1-2], at ¶¶ 47-50) (emphasis added). Count I, setting forth the plaintiff's request for declaratory relief, states:

> 54. There is a real and actual dispute between the parties regarding the scope of the arbitration provisions contained within the Merger Agreement, the Escrow Agreement and the Business Services Agreement. Defendants claim that the arbitration is limited to issues regarding the Escrow Agreement and that the arbitration panel may not hear issues related to plaintiffs' other claims. Accordingly, plaintiffs seek a declaration by this Court whether any or all of plaintiffs' claims are subject to the arbitration provisions in the Merger Agreement, the Escrow Agreement or the Business Services Agreement and whether such provisions are voidable by plaintiffs.

(*Id.* at ¶ 54). It is clear from paragraphs 47-50 that the relief sought by the plaintiffs was a declaration that all of their claims *against Journey* were arbitrable. Although paragraph 54 appears to discuss arbitration in the context of all defendants, reading it in context with paragraphs 47-50 also leads to the conclusion that the plaintiffs sought a declaration that all of their claims *against Journey* were arbitrable.

On December 3, 2010, I entered a Memorandum Opinion and Order [Docket 15]

discussing the arbitrability of the claims against the parties. The defendants, Fischler and Journey at the time, maintained that "all of the plaintiffs' claims fall within the scope of the arbitration clauses," while the plaintiffs disputed that "the entirety of their claims are subject to arbitration." (Mem. Op. & Order [Docket 15], at 3). I discussed the Federal Arbitration Act, noting the heavy presumption in favor of arbitration and that "any doubts concerning the scope of arbitrable issues shall be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). I then found "that the Merger Agreement, the Escrow Agreement, and the Business Services Agreement contain arbitration clauses committing the parties' current dispute to arbitration. Each of those three agreements contains a broad arbitration clause." (Mem. Op. & Order [Docket 15], at 3). Accordingly, I stayed the matter pending the arbitration of the parties' dispute.

### III. Discussion

With this procedural history in mind, I turn to Fischler's motion to enforce arbitration and to transfer. Fischler argues that the pending claims against him in his individual capacity should have been arbitrated, and that the plaintiffs' failure to assert these claims at the arbitration proceedings constitutes a waiver and abandonment of their claims. Fischler argues in the alternative that the claims against him should be referred to arbitration, notwithstanding the fact that he is not a signatory to the agreements. According to Fischler, he is entitled to enforce the arbitration agreement as to the claims against him because "[a]ll activities ascribed to him were carried out in his capacity as Journey's agent." (Def. Michael S. Fischler's Mot. to Enforce Arbitration & to Transfer [Docket 74], at 9). Fischler also relies on equitable estoppel, asserting that the plaintiffs must rely on the terms of the agreements in asserting its claims against him, and asserting that the plaintiffs allege "substantially interdependent and concerted misconduct"

3

by himself and Journey. (*Id.* at 11).

The plaintiffs argue that it was Fischler's responsibility to compel arbitration of the plaintiffs' claims against him. They argue that, because Fischler failed to make such a motion compelling arbitration, he has caused a prejudicial delay to the plaintiffs and has waived any such rights to compel arbitration. The plaintiffs then argue that Fischler is not entitled to enforce the arbitration against him based on either a theory of agency or a theory of estoppel, because the claims were brought against him in his individual capacity, not in his official capacity, and because the plaintiffs do not rely on any provisions of the three agreements or seek any benefits from the contracts.

### A. *The Plaintiffs did not Waive or Abandon Their Claims Against Fischler*

As discussed above, the actual parties to the arbitration agreements were the plaintiffs and Journey, and the written submission to the AAA named Journey as sole respondent. To the extent that the court's December 3, 2010 Order was unclear or inartfully drafted, the court now clarifies that it is to be construed to say that *all of the plaintiffs' claims against Journey* were to be arbitrated. At the arbitration, both parties indicated to the arbitrator that Fischler was not a party, but appeared as representative for Journey. The arbitration award noted that Journey was the respondent and Fischler appeared as Journey's representative. Accordingly, the plaintiffs did not waive or abandon their claims against Fischler by failing to assert them at the previous arbitration.[1]

---

[1] Additionally, it is questionable whether the plaintiffs could have even required Fischler to submit to arbitration, as "[g]enerally, arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which it has not agreed." *R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n*, 384 F.3d 157, 160 (4th Cir. 2004) (internal quotations and modifications omitted). Of course, exceptions exist—for example, where "theories arising out of common law principles of contract and agency law" bind a nonsignatory, or when a nonsignatory "is seeking or receives a direct benefit from a contract containing an arbitration clause." *Id.* at 160-61 (internal quotations and citations omitted). In any event, the plaintiffs did not have the obligation to assert their claims against Fischler at the arbitration.

4

### B. *Fischler did not Waive his Right to Enforce Arbitration*

Under section 3 of the Federal Arbitration Act, a party "in default in proceeding with" arbitration may lose its right to arbitration. 9 U.S.C. § 3; *see Forrester v. Penn Lyon Homes, Inc.*, 553 F.3d 340, 343 (4th Cir. 2009). The party opposing arbitration has the "heavy burden" of showing default. *Id.* (quoting *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 95 (4th Cir. 1996)). Simply failing to assert arbitration as an affirmative defense, or simple delay and participation in litigation alone does not constitute default. *Id.* However, "a party will default its right to arbitration if it 'so substantially utilize[es] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay.'" *Id.* (quoting *Maxum Founds., Inc. v. Salus Corp.*, 779 F.2d 974, 981 (4th Cir. 1985)).

The plaintiffs rely on *Forrester* in arguing that Fischler's prejudicially delayed in moving to enforce arbitration. In *Forrester*, however:

> Penn Lyon waited until the eve of trial to file its motion to compel arbitration. By that time, over two years of litigation had occurred in which the Forresters had engaged in extensive pretrial preparations including multiple depositions, a motion for summary judgment, motions in limine, and submission of an array of pretrial filings. . . . This use of the litigation process by Penn Lyon caused the Forresters actual prejudice. It required the Forresters to expend significant time and money responding to Penn Lyon's motions and preparing for trial, permitted Penn Lyon to defeat several of the Forresters' claims on summary judgment, and forced the Forresters to reveal their trial strategy.

*Id.* The court distinguished the cases that Penn Lyon relied upon: "None involves equally extensive pretrial filings, resolution of a motion for summary judgment, or an indicating that the delayed request for arbitration provided the party seeking arbitration to a strategic advantage." *Id.* at 343-44.

A review of the record in this case indicates that Fischler has not "substantially utilized the litigation machinery" such that the plaintiffs are prejudiced by his delay in asserting

5

arbitration. *Id.* at 343. On December 3, 2010, this matter was stayed pending arbitration. Between December 2011 and the present day, Fischler has filed (1) a response to the plaintiffs' motion to confirm arbitration award; (2) a renewed motion to dismiss; (3) supplemental jurisdictional briefings ordered by the court; (4) the instant motions to dismiss, to enforce arbitration, and to transfer; and (5) responses and replies to such motions where appropriate. Although the court notes that four years have passed since the plaintiffs submitted the their case against Journey for arbitration, and that three years have passed since the plaintiffs filed their Complaint, "delay and participation in litigation alone does not constitute default." *Forrester*, 553 F.3d at 343.

### B. *Fischler has Standing to Compel Arbitration in this Case*

"Generally, arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which it has not agreed to arbitrate." *R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n*, 384 F.3d 157, 160 (4th Cir. 2004) (internal quotation marks omitted). However, "[i]t is well-established . . . that a nonsignatory to an arbitration clause may, in certain situations, compel a signatory to the clause to arbitrate the signatory's claims against the nonsignatory despite the fact that the signatory and nonsignatory lack an agreement to arbitrate." *Am. Bankers Inc. Group, Inc. v. Long*, 453 F.3d 623, 627 (4th Cir. 2006). Of the theories that the Fourth Circuit has recognized, Fischler argues that the theories of agency and estoppel apply.[2]

Here, the theory of equitable estoppel applies. There are two circumstances under which equitable estoppel allows a nonsignatory to compel arbitration: (1) "when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written

---

[2] In *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, the Fourth Circuit discussed several principles, and noted that the Second Circuit has recognized five theories: "1) incorporation by references; 2) assumption; 3) agency; 4) veil piercing/alter ego; and 5) estoppel." 206 F.3d 411, 417 (4th Cir. 2000) (quoting *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)).

agreement in asserting its claims against the nonsignatory" and (2) "when the signatory raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Brantley v. Republic Mortg. Ins. Co.*, 424 F.3d 392, 395-96 (4th Cir. 2005). Here, the court is primarily faced with the latter question.[3] The Fourth Circuit has noted that "at a minimum, there must be allegations of coordinated behavior between a signatory and a nonsignatory defendant, and that the claims against both the signatory and nonsignatory defendants must be based on the same facts, be inherently separable, and fall within the scope of the arbitration clause." *Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 374 (4th Cir. 2012) (internal citations and quotations omitted). Here, the plaintiffs' fraud claims state as follows:

> 57. Defendants falsely and fraudulent and with the intent to deceive and defraud, misrepresented to plaintiffs that: (1) the Escrow Account would be established and funded upon plaintiffs' execution of the Escrow Agreement; (2) the only change contained within the "new" Escrow Agreement was the substitution of CapitalOne for JPMorgan Chase as escrow agent; (3) the remaining balance of the purchase price for plaintiffs' stock in CCV would be released upon the passage of one hundred and eighty (180) days from closing; and, (4) accounting systems would be implemented in order to account for CCV's future sales and profits.
>
> 58. Those representations were false and known to be false by defendants at the time they were made.
>
> 59. In addition, defendants misrepresented the significance of any financial

---

[3] The plaintiffs' reliance on *Am. Bankers Ins. Group, Inc. v. Long* is slightly misplaced. 453 F.3d 623, 627. In *Long*, the Fourth Circuit dealt only with the issue of whether the signatory relied upon the terms of the agreement in asserting its claims against the nonsignatory. *Id.* at 627-28. The court did not discuss the second theory of equitable estoppel—whether the signatory raised allegations of substantially interdependent and concerted misconduct by the nonsignatory and a signatory. *Aggarao*, 675 F.3d at 373.
    I note, nonetheless, that even under *Long*'s theory of equitable estoppel, Fischler has standing to compel arbitration. The plaintiffs themselves argued before the arbitrator that the "fraud allegations are inextricably linked to the three agreements." (Claimants' Resp. to Journey's Mot. Regarding Arbitrability [Docket 80-1], at 14). Indeed, these allegations at their core are that the fraudulent misrepresentation and inducement led to the signing of the three agreements that the defendants subsequently breached. (*See* Compl. ¶¶ 56-61). These allegations therefore must rely on the terms of the agreements: if the agreements were not breached, then no fraud would have occurred.

> disclosures made by plaintiffs and delayed the closing arbitrarily in order to justify their claim of offsets.
>
> 60.    Plaintiffs relied upon the representations of defendants and were thereby induced to enter into the Merger Agreement, the Escrow Agreement, and the Business Services Agreement.
>
> 61.    By reason of the fraudulent acts of defendants, and plaintiffs' reasonable reliance, plaintiffs have suffered damages . . .

(Compl. ¶¶ 57-61). I previously noted that "[t]he complaint is written such that when only certain defendants are included in the allegations, the complaint uses the name of that defendant. Thus, when the complaint references 'defendants' as a whole, it includes Fischler." (Mem. Op. & Ord. [Docket 62], at 7 n.2). It is clear from the complaint that the alleged fraud by the plaintiffs was taken by both Journey and Fischler together for the purpose of Journey's acquisition of CCV, and that the claims are based on the same facts and are inherently separable: the alleged misrepresentations by Fischler are the same alleged misrepresentations by Journey. The court has already ruled that the fraud claims against Journey fall within the scope of the arbitration agreements, and therefore the fraud claims against Fischler also fall within their scope. (Mem. Op & Ord. [Docket 15], at 5). Accordingly, I **FIND** that Fischler has standing to compel arbitration, and that all of the plaintiffs' claims against Fischler are arbitrable.

IV.    **Conclusion**

For the reasons discussed above, Fischler's motion to enforce arbitration and to transfer [Docket 74] is **GRANTED**, and the parties are to arbitrate the claims. "[D]ismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707 (4th Cir. 2001). Here, all remaining claims that the plaintiffs brought against Fischler are arbitrable. Accordingly, the court **ORDERS** this case be **DISMISSED** and stricken from the docket of this court. Fischler's motion to dismiss or transfer

[Docket 69] is **DENIED as moot**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

                ENTER:      February 15, 2013

                JOSEPH R. GOODWIN
                UNITED STATES DISTRICT JUDGE